# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| EDWARD R. LOPEZ and ) | Case No.  05-01832-TLM |
| SHIRLEY M. LOPEZ ) | |
| ) | MEMORANDUM OF DECISION |
| Debtors. ) | |
| _____ ) | |

## INTRODUCTION

Edward and Shirley Lopez ("Debtors") objected to a proof of claim filed by creditors Jude and Sharon Alberts ("the Alberts").  That objection was heard on January 17, 2006, and taken under advisement.  The objection will be sustained, in part.  The following Memorandum of Decision constitutes the Court's findings of fact and conclusions of law as required by Federal Rules of Bankruptcy Procedure 7052 and 9014.

## BACKGROUND AND FACTS

Debtors filed for chapter 13 bankruptcy relief on May 10, 2005.  Doc. No. 1.[1]  At that time, they were defendants in a pending state court action in Oregon commenced by the Alberts in 2004 seeking a money judgment on a note and a judicial decree of foreclosure on a mortgage securing that debt.  Trial in that action

---

[1] The Court takes judicial notice of its files and records pursuant to Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 1

was set for May 16, 2005.

The Alberts had hired Oregon attorney Cory Larvik to represent them. Mr. Alberts was on a fixed income and could not pay a retainer or hourly fee. Larvik agreed to take the case on a contingency fee basis. *See* Ex. 19, 20. Mr. Alberts was responsible for any costs.[2] The Alberts agreed to pay Larvik fifty percent of any sum recovered net of any actual expenses not already reimbursed. The agreement allowed Larvik to employ "investigators and experts" with his clients' consent. The agreement was silent as to Larvik's authorization to hire other attorneys.

Larvik prepared the complaint[3] but not in a cost efficient manner. In particular, Larvik had significant difficulty determining interest accruals on the underlying debt.[4] These problems generated additional out of pocket expenses as well as significant amounts of legal time.[5]

Larvik then had trouble effecting service on Debtors once the complaint

---

[2] Sharon is Jude's ex-wife. She had an interest in the claim, however, Larvik and Jude agreed she would not be responsible for any of the costs Larvik incurred in collection.

[3] Each party introduced the complaint as an exhibit. *See* Ex. 1, Ex. B. The Court regularly requests parties confer regarding potential exhibits to eliminate redundant documents. The Court will hereafter refer to only one exhibit where duplication exists.

[4] Larvik and the Alberts admit they improperly calculated the interest accruals, and that the calculations found in the complaint, and later in the judgment, are in error.

[5] Larvik testified that his hourly rate during the period in question was $125/hour. His billing history is attached to the proof of claim, Ex. 18. The reasonableness of his fees and costs is explored at length *infra*.

MEMORANDUM OF DECISION - 2

was filed. Once Debtors were served, they answered through Oregon attorney Kip Roberson. Larvik's negotiations with Roberson were not fruitful.

In February 2005, Roberson sought to withdraw as Debtors' counsel. *See* Ex. 8. The request was granted in March 2005. Ex. 9. The Oregon state court, however, held the parties to the May 16, 2005, trial date. *Id.*

Around May 10, another lawyer (Leuenberger) contacted Larvik and inquired on Debtors' behalf about the upcoming trial. He indicated Debtors had not yet decided whether to hire him. Leuenberger later called Larvik to inform him Debtors decided not to retain him.

Debtors did not appear at the scheduled May 16 trial personally or through counsel. They had, six days earlier, filed bankruptcy. While there was some testimony they may have told Leuenberger of plans to file bankruptcy, this assertion was not proven. Moreover, there is no evidence to establish Leuenberger told Larvik of the impending bankruptcy filing.

In addition, Debtors did not list the Alberts or Larvik on the creditor mailing matrix when they filed their bankruptcy petition on May 10, 2005. Nor did they otherwise provide notice of the bankruptcy filing to the Alberts or Larvik. Their bankruptcy attorney, Bob Pangburn, did not advise Larvik, the Alberts or the Oregon state court of his clients' filing.

The trial took place as scheduled, and the Alberts put on a prima facie case. *See* Ex. 10.

MEMORANDUM OF DECISION - 3

Case 05-01832-TLM Doc 58 Filed 02/13/06 Entered 02/13/06 14:46:07 Desc Main

On May 26, 2005, Debtors filed their bankruptcy schedules, listing the Alberts as unsecured creditors on schedule F and showing the Oregon state court litigation in response to question 4 on their statement of financial affairs. *See* Doc. Nos. 10, 11. On June 9, Debtors gave the Alberts notice of their bankruptcy filing.[6]

After receiving notice of Debtors' bankruptcy, Larvik nevertheless submitted further pleadings in the Oregon state court in order to obtain entry of a judgment. *See, e.g.*, Ex. A (statement of fees, and affidavit in support of statement of fees, dated 6/24/05).[7] Larvik's affidavit actually described the notice of Debtors' chapter 13 filing that he and his clients received. *Id.* at 4.

The Oregon state court then entered a judgment in favor of the Alberts on June 30, 2005, establishing the amount of the claim and authorizing foreclosure. *See* Ex. 11.[8]

The Alberts, through Larvik and Idaho bankruptcy attorney Randal French, thereafter moved this Court to annul the automatic stay and to dismiss Debtors' bankruptcy case. Both these motions were denied following hearing. *See* Doc.

---

[6] Larvik, now armed with Debtors' chapter 13 plan, proof of claim form and a copy of the 341 notice, contacted Debtor's bankruptcy counsel who advised him that the Alberts had inadvertently been left off the original creditor mailing matrix.

[7] Certain of the exhibits discussed in this Decision were introduced at a hearing held November 8, 2005. *See* Doc. No. 41 (minute entry). The Court considers them in addition to exhibits introduced on January 17. *See* Doc. No. 55 (minute entry).

[8] Judgments entered in violation of § 362(a)'s automatic stay are void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir. 1992).

MEMORANDUM OF DECISION - 4

No. 41 (minute entry).

The Alberts filed a $41,128.79 proof of claim, attaching the Oregon state court judgment, and later amended their claim to assert only a $32,525.10 secured interest. *See* Claim Nos. 5, 6. The Alberts attached a "History Bill" to the amended proof of claim, No. 6.[9] Of the total amended proof of claim, $19,326.15 is attributable to attorney's fees and costs.

Debtors objected to the Alberts' amended proof of claim. *See* Doc. No. 45. While Debtors and the Alberts now agree the principal secured debt is $5,402.13, and the interest component is $7,506.82, Debtors dispute the asserted fees on the basis that they are unreasonable.[10]

## DISCUSSION AND DISPOSITION

The fees asserted here are for services rendered both pre-petition and post-petition. According to the History Bill, the charged services span from June 17, 2003 (well prior to the May, 2005 bankruptcy) to January 11, 2006 (significantly post-bankruptcy). The asserted fees thus implicate § 502, governing evaluation of the pre-bankruptcy claim, and § 506(b) which deals with the allowance of post-

---

[9] The amended proof of claim was admitted as Ex. 18.

[10] Debtors objection states the "correct amount of its secured claim is $17,910.00 (principal $5,402.13, interest $7,506.82, reasonable attorney fee **of no more than** $5,001.05)." Doc. No. 45. Debtors attorney "clarified" at hearing that this was not a concession as to the allowable (or "correct") amount of fees but was intended as a "cap," and Debtors felt a "reasonable" fee should be something less than $5,000 though they would not provide a number nor any analysis to support their assertion.

MEMORANDUM OF DECISION - 5

bankruptcy costs and attorney's fees.[11]  Therefore, there are two areas of inquiry needed to resolve the objection to claim.

### A.    Objection to the pre-bankruptcy portion of claim.

*Lundell v. Anchor Construction Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000), addressed the burdens placed on litigants following the filing of a proof of claim and the assertion of an objection to that claim:

> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and the amount of the claim" pursuant to Bankruptcy Rule 3001(f).  *See also* Fed. R. Bankr. P. 3007.  The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief.  *See* Adv. Comm. Notes to Fed. R. Bankr. P. 9014.
>
> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd,* 91 F.3d 151, 1996 WL 393533 (9th Cir. 1996).  To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
>
> . . .
>
> "If the objector produces sufficient evidence to negate one

---

[11] The parties concede that the Alberts are oversecured creditors.  Thus, § 506(b) is applicable.  However, as neither party bothered to brief any § 502 or § 506(b) issues, counsels' arguments were uninformed and decidedly unhelpful.

MEMORANDUM OF DECISION - 6

> or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by the preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)). The ultimate burden of persuasion remains at all times upon the claimant. *In re Hold*, 931 F.2d at 623.

223 F.3d at 1039; *see also In re Fulbright*, 319 B.R. 650, 662-63 (Bankr. D. Mont. 2005); *In re Kaskel*, 269 B.R. 709, 713, 01.4 I.B.C.R. 139, 140-41 (Bankr. D. Idaho 2001)*; In re Blackstone*, 269 B.R. 699, 703, 01.4 I.B.C.R. 135, 136 (Bankr. D. Idaho 2001).

With those burdens in mind, the Court begins its analysis. The first, and the Court would hope quite obvious, conclusion is that the June, 2005 Oregon state court judgment is irrelevant. It was entered after Debtors filed for bankruptcy relief and is void under *Schwartz*. Thus it provides no basis for validating any aspect of the pre-bankruptcy claim, whether principal, interest or attorney's fees and costs.[12]

The Alberts' amended proof of claim, Claim No. 6, does not attach the void Oregon state court judgment. Instead, it attaches only the "History Bill" with the itemization of Larvik's fees and costs. Though Debtors concede a liability on the promissory note, they dispute the reasonableness of the fees incurred in attempting

---

[12] Stay violation and *Schwartz* were addressed at the November 8, 2005 hearing. It appears that Larvik thereafter took steps to vacate the Oregon judgment. The parties continue to debate, however, whether Larvik effectively vacated the judgment and removed any resultant judgment lien. If not effectively vacated, there may be an ongoing stay violation. However, Debtors did not file any motion to address this concern nor introduce sufficient evidence on the issue. Thus, the Court makes no findings as to these issues.

MEMORANDUM OF DECISION - 7

to collect on that note. They also question the Alberts' actions in post-bankruptcy pursuit of the Oregon state court judgment. This, given the facts of this case and the detail in the History Bill itself, was sufficient to revert the burden to the Alberts to prove the validity of their claim.[13]

Under § 502(b), the Court must determine the amount of the claim and allow it unless the claim is unenforceable against debtor or property of the estate under "any agreement or applicable law." *See* § 502(b)(1). The parties did not identify any applicable Oregon law that would validate or invalidate the Alberts' claim to attorney's fees.[14] Instead, they focused on the promissory note signed by Debtors. *See* Ex. 1 (complaint) at internal Ex. 1 (promissory note). The Court therefore assumes that Oregon law would allow reasonable attorneys' fees based on contract.

The note states "[i]n case of suit hereon or foreclosure, the makers hereof agree to pay a reasonable attorney's fee in addition to other costs." Under the agreement, the Alberts are entitled only to "reasonable" attorney's fees incurred in

---

[13] During opening argument, Debtors laid out the history of the case and the fact that they disputed the amount and reasonableness of the attorney's fees and costs. The Alberts alleged the Debtors' had failed to carry their burden (without discussing *Lundell* or any other authority). The Court took that contention under advisement. It now determines the nature of the claimed attorney's fees and costs associated with the Alberts' actions in the state court, and the conduct of creditors and their counsel during the bankruptcy case, are alone enough to shift the burden to the Alberts to prove the validity of the claim. Moreover, as will be discussed *infra*, the burden of demonstrating reasonableness of fees under § 506(b) remains with the claimant.

[14] The Alberts did mention O.R.S. § 20-190(3) in connection with "enhancing" fees at trial but did not otherwise discuss state law relevant to the claim of fees and costs.

MEMORANDUM OF DECISION - 8

a suit on or foreclosure of the promissory note, and the Court reviews the claim under a reasonableness standard.[15]

### 1. Larvik's overhead.

The Alberts reasonably and necessarily incurred attorney's fees and costs in instituting the litigation. However, the History Bill attached to the amended proof of claim lists several time entries beginning on August 20, 2003, that itemize time Larvik spent creating and documenting the contingency fee agreements with the Alberts.[16] Such time is not only unreasonably excessive, it does not fall within the note's language. It is fundamentally part of Larvik's overhead in running a law office. He bears that cost of doing business and, if he is inefficient in documenting the fee arrangements of an engagement, it's his problem, not his clients or his clients' adversaries. This is not compensable time and $787.50 will not be allowed.

### 2. Computing interest.

Another problematic area involves Larvik's computation of interest.[17]

---

[15] This is not a difficult challenge; the Court is regularly required to evaluate fees and costs under such a standard. *See* § 330(a).

[16] *See* Ex. 18, time entries at 8/20/2003: 0.75 and 0.50 hours totaling $156.25; 2/13/2004: 0.50, 1.00 and 1.00 hours totaling $312.50; 2/20/2004: 0.30 hours totaling $37.50; 2/23/2004: 0.30 hours totaling $37.50; 3/01/2004: 0.50 hours totaling $62.50; 03/18/2004: 0.20 hours totaling $25.00; and 3/20/2004: 0.75 and 0.50 hours totaling $156.25. The grand total charged for drafting and documenting the contingency fee agreement is $787.50 (6.30 hours).

[17] *See* Ex. 18, time entries at 8/19/03: 0.50 and 0.50 hours totaling $125.00; 11/12/2003: 0.30 hours totaling $37.50; 11/25/2003: 3.50, 1.00 and 1.25 hours totaling $718.75; 6/15/2004:
(continued...)

MEMORANDUM OF DECISION - 9

Larvik spent hours trying to calculate the interest himself, followed by conversations with the Alberts and a certified public accountant. These pre-petition entries total 8.15 hours, amounting to a $1,018.75 charge. Larvik stated at hearing that after 45 minutes, he had made it through only one year of interest accrual and realized the calculations were beyond his capabilities. Any further time spent by Larvik individually, is unreasonable.

Moreover, while the Court realizes Larvik would need to communicate with his client about the issue, and with the experts he hired to compute the interest, the time he spent in such communication is not shown to be reasonable. The Court will allow a total of four hours of time, amounting to $500.00, for Larvik to obtain the pre-bankruptcy interest calculations and for the discussions related thereto.

### 3. Trial preparation.

The remainder of Larvik's pre-petition time entries, including his telephone conferences with Roberson and Leuenberger and his trial preparation, must be allowed. Debtors failed to put on evidence, or make cogent arguments, regarding the reasonableness of these charges.

Thus, the Court concludes the Alberts have proven a valid, pre-petition

---

[17](...continued)
0.50 hours totaling $62.50; 6/16/2004: 0.30 hours totaling $37.50; 6/17/04: 0.30 hours totaling $37.50. The grand total charged for all entries dealing with interest rate calculations is $1,018.75.

MEMORANDUM OF DECISION - 10

claim that includes $6,361.30 in attorney's fees and costs.[18]

### 4. Principal debt, and interest.

The parties have stipulated the principal amount of the debt is $5,402.13. In addition, the parties stipulated that the "interest accrued is $7,506.82." *See* Doc. No. 54 at 1. However, the interest figure includes both pre- and post-petition interest up to January 1, 2006. The Court was not given the figures or the tools to determine which portion of the interest accrued pre-petition and, therefore, cannot find a specific amount for the full pre-petition claim under § 502(b).[19]

### B. Objection to post-bankruptcy portion of claim

Oversecured creditors may be entitled to post-petition interest and attorney's fees and costs pursuant to § 506(b).[20] Four elements must be met in order to recover such fees:

(1) the creditor's claim is an allowed secured claim; (2) the creditor is

---

[18] Time entries total 54.9 pre-petition hours. At $125.00 per hour, Larvik's proposed fee would be $6,862.50. Subtracting out the unreasonable entries for documenting his client fee agreement ($787.50) and wasted time on interest calculations ($518.75), the fees total $5,556.25. Larvik also claims $805.05 of pre-petition costs. No specific objection is raised regarding costs and they appear reasonable. The costs are allowed.

[19] Since the parties agree the Alberts are oversecured and since § 506(b) allows for post-petition interest, the inability to segregate interest accruals as of May 10, 2005 is somewhat academic.

[20] Section 506(b) states:

To the extent that an allowed secured claim is secured by property the value of which, after any recover under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose.

MEMORANDUM OF DECISION - 11

oversecured; (3) the fees are reasonable; (4) the fees are provided for under the agreement.

*In re Staggie*, 255 B.R. 48, 51, 00.4 I.B.C.R. 203, 204 (Bankr. D. Idaho 2000) (quoting *Kord Enters. II v. California Commerce Bank (In re Kord Enters. II)*, 139 F.3d 684, 689 (9th Cir. 1998)); *see also Hassen Imports P'ship v. KWP Fin. VI (In re Hassen Imports P'ship)*, 256 B.R. 916, 925 (9th Cir. BAP 2000); *In re Peck*, 03.2 I.B.C.R. 115, 116 (Bankr. D. Idaho 2003).

### 1. The Alberts hold an allowed, secured claim

The parties agree the Alberts hold an allowed secured claim. *See* Doc. No. 51 (amended schedule D listing the Alberts as secured creditors).[21] The Court's § 502 findings, *supra*, establish the allowed secured claim includes $5,402.13 in unpaid principal, $6,361.30 in attorney's fees and costs, and some portion of the agreed interest accrual figure. Thus, the first element is met.

### 2. The Alberts are oversecured

Not only do the Alberts hold an allowed secured claim, they are oversecured creditors. Debtors' schedule A lists the value of the property as $100,000.00. There is only one other secured claim, of $3,818.71, on this property. *See* Claim No. 1 (Union County). The Alberts' claim is far less then the equity available in the property. Therefore, the second element is met.

---

[21] The secured status is based upon a mortgage, and not the lien created by the recording of the void Oregon judgment discussed earlier.

MEMORANDUM OF DECISION - 12

### 3. The language in the parties' agreement

The fourth factor is that the attorney's fees are provided for under the parties' agreement. The Court must "look to the language of the relevant contractual instrument, and determine its breadth based on the language contained therein." *Hassen Imports*, 256 B.R. at 925-26. Here, the promissory note signed by Debtors states that "[i]n case of suit hereon or foreclosure, the makers hereof agree to pay a reasonable attorney's fee in addition to other costs." *See* Ex. 1 at internal Ex. 1.

The Oregon state court litigation was clearly a "suit" on the promissory note, and also one in "foreclosure." *See* Ex. 1. Thus, any reasonable attorney's fees incurred in pursuit of that litigation would be covered by the promissory note.

On the other hand, the attorney's fees incurred in the bankruptcy litigation (attempts to annul stay, motion to dismiss, objection to claim) would not fall within the language of the agreement. *See In re Casperson*, 83 I.B.C.R. 27 (Bankr. D. Idaho 1983) (disallowing § 506(b) treatment of creditor's attorney's fees incurred in opposing confirmation of chapter 13 plan and other bankruptcy issues where agreement provided for fees "[i]f suit is brought to collect this [n]ote[.]").

The Court determines that, here, the actions of the Alberts in the bankruptcy proceeding, including their motions to dismiss the chapter 13 case and to annul the automatic stay, are not "suits" on the note nor in the nature of a

MEMORANDUM OF DECISION - 13

foreclosure of the mortgage securing the note. As in *Casperson*, the attorney's fees associated with the bankruptcy are not covered by the language of the agreement. Thus, none of the claimed costs and fees after June 6, 2005, will be allowed under § 506(b).[22]

### 4. Reasonableness

Because the Court has concluded that no post-petition bankruptcy-related fees are allowable given the language of the agreement, it need not proceed further in evaluating any of those bankruptcy-related services. However, the Alberts post-petition legal fees incurred in the state court action do fall within the reach of the note and the Code.[23]

The Alberts bear the burden to demonstrate the post-petition attorney's fees and costs asserted, if the same fall within the agreement, were reasonable. *See Staggie*, 255 B.R. at 52, 00.4 I.B.C.R. at 204 (noting that "[t]he burden of establishing the reasonableness of attorney's fees is on the creditor"). This would be required not only given the express language of § 506(b) but also due to the language of the note provision itself.

---

[22] The Court appreciates that *Pope v. Sali (In re Pope)*, 91 I.B.C.R. 141 (Bankr. D. Idaho 1991), construed a note providing for fees "if action be instituted on this note" as broad enough to support § 506(b) fees incurred in an adversary proceeding determining the validity and enforceability of creditor's deeds of trust. *Id.* at 142-43. However there was "an action instituted" in that case and the Court finds the instant situation distinguishable.

[23] Ordinarily, post-petition state court litigation would be presumptively unreasonable because it would be stayed by the bankruptcy filing. Here, however, there was a period of time between the filing and adequate notice to the Alberts of the filing. The voidness of the judgment does not mean that the services rendered in this gap period are necessarily unreasonable.

MEMORANDUM OF DECISION - 14

>This Court has previously stated that:
>
>Reasonableness embodies a range of human conduct. The key determinant is whether the creditor . . . took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable. The bankruptcy court should inquire whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property.

*Peck*, 03.2 I.B.C.R. at 116 (quoting *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987)).

### a.     Larvik's trial preparation.

Here, the Court finds Larvik's various charges and fees for trial preparation between May 10, 2005, and June 6, 2005, are reasonable. As neither Debtors nor their counsel provided Larvik or the Alberts with notice of their bankruptcy, it was reasonable for Larvik and the Alberts to prepare for and attend the state court trial. Therefore, $1,586.70[24] will be allowed as fees and costs under § 506(b) for the work performed between the time Debtors' filed their petition and the time Larvik received notice of the bankruptcy.[25]

---

[24] Larvik itemized nine hours preparing for and attending the Oregon state court trial. His time entries total $1,125.00 in attorney's fees from May 10, 2005, through June 6, 2005, prior to his June 6, 2005, entry reviewing Debtors' bankruptcy petition. Those fees were incurred in relation to a "suit" on the promissory note and must be allowed. In addition, the costs the Alberts incurred in attending the Oregon state trial must also be allowed under the agreement. The Alberts' mileage is claimed at an effective rate of $0.405 per mile. Their claim that this rate is consistent with government per diem rates was not contradicted. The allowed travel cost amounts to $461.70. The attorney fees of $1,125.00 added to the costs of $461.70, equals $1,586.70.

[25] The Court need not analyze the remaining post-June 6 fee entries, as they were
(continued...)

MEMORANDUM OF DECISION - 15

**CONCLUSION**

Debtors' objection to the Alberts' claim, Doc. No. 45, will be SUSTAINED IN PART. The Alberts hold a pre-petition allowed secured claim with a principal amount of $5,402.13 and attorney's fees and costs in the amount of $6,361.30. Furthermore, allowable post-petition attorney's fees and costs have been established under § 506(b) in the amount of $1,586.70. The parties have stipulated that the "accrued interest" on that claim is $7,506.82 as of January 1, 2006. In addition, the Alberts, as oversecured creditors, continue to be entitled to accruing interest under § 506(b).

---

[25](...continued)
connected with the bankruptcy proceeding, not the state court suit. However, even if the Court were to conclude that bankruptcy services fell within the language of the promissory note (something the Alberts' did not establish and the Court has rejected), the Court would not allow a large majority of those charges as they were unexplained or presumptively unreasonable. For example:

- a. Larvik's extensive self education regarding bankruptcy issues cannot reasonably be charged to his clients or, through fee shifting, to his clients' adversaries.
- b. Larvik's several contacts with individuals regarding "bankruptcy issues" were unexplained.
- c. The "SZ" entries were unexplained and unsubstantiated, and those services appear largely clerical in nature.
- d. Larvik's and French's duplicative attorney's fees are not reasonable.
- e. The "costs" on Larvik's History Bill, through which French's fees are claimed, is not an acceptable approach to § 506(b) requirements; French's fees were not presented in an appropriate, itemized fashion and thus not sufficiently explained.
- f. There was a clear and unanswered question as to whether the Alberts' were obligated to pay French's fees; if the creditors are not liable to pay them, the creditors cannot assert them against Debtors or the collateral under § 506(b).
- g. Larvik's fees associated with his actions that violated the automatic stay and any charges associated with the motion to annul the stay (attempting to ratify his actions and remedy the void Oregon state court judgment), and any charges associated with vacating the improper and void judgment are not reasonable.
- h. Larvick's continued, post-bankruptcy struggle to calculate interest rates was time intensive and largely unreasonable.

MEMORANDUM OF DECISION - 16

Thus, as of January 1, 2006, the amount of the Alberts' allowed, secured claim was $20,856.95. Debtors' shall submit a proposed order consistent with this decision and the parties' stipulation.

DATED: February 13, 2006

*signature*

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 17